NO. COA13-496

NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

STATE OF NORTH CAROLINA

   v.

AUDRA LINDSEY SMATHERS

Transylvania County
No. 10CRS51037

Appeal by defendant from judgment entered 28 July 2012 by Judge Mark E. Powell in Transylvania County Superior Court. Heard in the Court of Appeals 9 October 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Martin T. McCracken, for the State.*
>
> *Leslie C. Rawls for defendant-appellant.*

HUNTER, Robert C., Judge.

Audra Lindsey Smathers ("defendant") appeals from judgment entered pursuant to her *Alford* plea to driving while impaired. Specifically, defendant challenges the order entered by the trial court denying her motion to suppress evidence gathered during a traffic stop. On appeal, defendant argues that the trial court erred by denying her motion because the officer had neither reasonable suspicion nor probable cause to seize her, and the seizure was unreasonable under the Fourth Amendment.

After careful review, we affirm the trial court's order.

**Background**

The facts of this case are largely undisputed. Shortly after 10:00 p.m. on 27 May 2010, Transylvania Sheriff's Deputy Brian Kreigsman ("Officer Kreigsman") was traveling down Highway 280 in the interior lane adjacent to the center turning lane roughly one car length behind defendant, who was driving a red Corvette in the right lane. Defendant was traveling at speeds close to the posted limit of 45 miles per hour, and Officer Kreigsman did not observe anything illegal or suspicious about her driving.

Officer Kreigsman then saw a large animal run in front of defendant's vehicle. Defendant struck the animal, causing her vehicle to bounce and produce sparks as it scraped the road. Officer Kreigsman pulled his police cruiser behind defendant, who had decreased her speed to about 35 miles per hour, and activated his blue lights. He testified that because he knew Corvettes have a fiberglass body, he stopped defendant to ensure that she and the vehicle were "okay." Defendant continued without stopping after Officer Kreigsman activated his blue lights, so he turned on his siren; defendant continued for about 1.1 to 1.2 miles before

stopping.[1]  Officer Kreigsman called in for backup after defendant did not immediately stop her vehicle and relayed over the radio that he was making a stop because the vehicle had struck an animal. Deputy Justin Bell ("Deputy Bell") arrived shortly thereafter with other officers.

Once stopped, Officer Kreigsman approached the driver's side of the vehicle and saw defendant crying.  She and her passenger told Officer Kreigsman that they had hit a dog.  He examined defendant's vehicle and saw that the front had been cracked and damaged, presumably by the collision with the animal.  Both Officer Kreigsman and Deputy Bell detected the scent of alcohol coming from defendant.  Officer Bell noticed that she also had glassy eyes and slurred speech.  He conducted roadside sobriety tests, which defendant failed.  After failing the field tests, defendant submitted to roadside breath tests, which produced a positive indication of alcohol consumption.  Defendant was then taken into custody and charged with driving while impaired.  Later testing showed that her blood alcohol concentration was .18.

---

[1] Officer Kreigsman testified that this procedure was not uncommon due to "blue light bandits" in the area who would impersonate police officers by attaching blue lights to their vehicles.  It is uncontested that defendant's continued driving did not produce reasonable suspicion of illegal activity.

Defendant pled guilty to the charge of driving while impaired in District Court and appealed to the Superior Court. She moved to suppress all evidence gathered from Officer Kreigsman's stopping of her vehicle on the ground that he had neither probable cause nor reasonable suspicion to seize her and that the seizure was unreasonable under the Fourth Amendment. The trial court denied defendant's motion. Defendant entered an *Alford* plea on 20 December 2012 and appealed in open court from the judgment and ruling on her motion to suppress.

## Discussion

### I. The Community Caretaking Doctrine

Defendant's sole argument on appeal is that the trial court erred by denying her motion to suppress. Specifically, she claims that Officer Kreigsman had neither probable cause nor reasonable suspicion to seize her, and the seizure was unreasonable under the totality of the circumstances, thereby violating the Fourth Amendment. The State concedes that Officer Kreigsman had neither probable cause nor reasonable suspicion to seize defendant, but instead asks this Court to adopt a version of the "community caretaking" doctrine to affirm the trial court's order. After careful review, we formally recognize the community caretaking doctrine as an exception to the warrant requirement of the Fourth

Amendment, and we hold that Officer Kreigsman's seizure of defendant falls under this exception. Therefore, we affirm the trial court's order denying defendant's motion to suppress.

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "The trial court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

The Fourth Amendment to the United States Constitution and Article I, Section 20 of the North Carolina Constitution prohibit unreasonable searches and seizures. U.S. Const. amend. IV; N.C. Const. art. I, § 20. Traffic stops are recognized as seizures under both constitutions. *See State v. Styles*, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) ("A traffic stop is a seizure even though the purpose of the stop is limited and the resulting detention quite brief.") (quoting *Delaware v. Prouse*, 440 U.S. 648, 653, 59 L. Ed. 2d 660, 667 (1979)). Although a warrant supported by probable cause is typically required for a search or

seizure to be reasonable, *State v. Phillips*, 151 N.C. App. 185, 191, 565 S.E.2d 697, 702 (2002), traffic stops are analyzed under the "reasonable suspicion" standard created by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968). *Styles*, 362 N.C. at 414, 665 S.E.2d at 439. "Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. The standard is satisfied by some minimal level of objective justification." *Id.* (citation and quotation marks omitted). "A court must consider 'the totality of the circumstances—the whole picture' in determining whether a reasonable suspicion to make an investigatory stop exists." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (quoting *U.S. v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981)). "When a defendant in a criminal prosecution makes a motion to suppress evidence obtained by means of a warrantless search, the State has the burden of showing, at the suppression hearing, how the [warrantless search] was exempted from the general constitutional demand for a warrant." *State v. Nowell*, 144 N.C. App. 636, 642, 550 S.E.2d 807, 812 (2001).

Here, the trial court concluded, and the State concedes, that no reasonable articulable suspicion of criminal activity existed

when defendant was seized. Officer Kreigsman's seizure of defendant was not predicated on criminal investigation or prevention of any kind; rather, he was checking to make sure that defendant and her vehicle were "okay" after hitting a large animal. Thus, the trial court did not apply the *Terry* doctrine, but instead utilized an unspecified "balancing test" to conclude that a seizure was made on defendant, but the seizure was "justified under the situation as observed by Officer Kreigsman." In so concluding, the trial court rejected defendant's contention that the stop was arbitrary and unreasonable, but also rejected the State's argument that the community caretaking exception was applicable, noting that the doctrine has not yet been explicitly recognized in North Carolina. We find that the generic "balancing test" applied by the trial court is not one of the "specifically established and well-delineated exceptions" which would otherwise render Officer Kreigsman's warrantless seizure of defendant constitutional. *See State v. Grice*, __ N.C. App. __, __, 735 S.E.2d 354, 356-57 (2012) ("As a general rule, searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.") (citation and quotation marks omitted). These exceptions, such as

exigent circumstances, *Nowell*, 144 N.C. App. at 643, 550 S.E.2d at 812, or the automobile exception, *State v. Corpening*, 109 N.C. App. 586, 589, 427 S.E.2d 892, 894 (1993), are unhelpful here, because they apply only to situations where officers are investigating or preventing criminal activity. Thus, we address the State's alternative argument – that this Court should recognize some variant of the community caretaking exception to affirm the order denying defendant's motion to suppress.

So far, North Carolina courts have only referenced the community caretaking exception in the limited context of impounding abandoned vehicles. *See State v. Phifer*, 297 N.C. 216, 219, 254 S.E.2d 586, 587 (1979) ("In the interests of public safety and as part of what the Court has called 'community caretaking functions,' automobiles are frequently taken into police custody.") (quoting *South Dakota v. Opperman*, 428 U.S. 364, 368-69, 49 L. Ed. 2d 1000, 1002 (1976)); *see also State v. Peaten*, 110 N.C. App. 749, 752-53, 431 S.E.2d 237, 239 (1993). Application of this doctrine outside the context of vehicle impoundment, specifically in regard to the seizure of citizens, is a matter of first impression. As such, an overview of how the exception has developed in similar contexts by courts in other jurisdictions is helpful to our determination here.

The community caretaking exception was established by the United States Supreme Court in *Cady v. Dombrowksi*, 413 U.S. 433, 37 L. Ed. 2d 706 (1973). In *Cady*, the Supreme Court held that the warrantless search of the defendant's vehicle after impoundment did not violate the Fourth Amendment because the vehicle was damaged and constituted a nuisance on the highway, the defendant could not arrange for the vehicle to be moved, and the standard police procedure of impounding the vehicle and searching it was reasonable under the circumstances to promote public safety. *Cady*, 413 U.S. at 443, 447-478, 37 L. Ed. 2d at 715-18. The Court reasoned that:

> Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Cady*, 413 U.S. at 441, 37 L. Ed. 2d at 714-15.

Since the Supreme Court's decision in *Cady*, a large majority of state courts have recognized the community caretaking doctrine as a valid exception to the warrant requirement of the Fourth Amendment. *State v. Moats*, 403 S.W.3d 170, 187, n. 8 (Tenn. 2013); *see, e.g., Commonwealth v. Evans*, 764 N.E.2d 841, 843 (Mass. 2002); *State v. Martinez*, 615 A.2d 279, 281 (N.J. Super. Ct. App. Div. 1992). The overarching public policy behind this widespread adoption is the desire to give police officers the flexibility to help citizens in need or protect the public even if the prerequisite suspicion of criminal activity which would otherwise be necessary for a constitutional intrusion is nonexistent.

> The doctrine recognizes that, in our communities, law enforcement personnel are expected to engage in activities and interact with citizens in a number of ways beyond the investigation of criminal conduct. Such activities include a general safety and welfare role for police officers in helping citizens who may be in peril or who may otherwise be in need of some form of assistance.

*Ullom v. Miller*, 705 S.E.2d 111, 120-23 (W.Va. 2010) (holding that an officer's seizure of the defendant was reasonable under the community caretaking exception where the officer saw the defendant's vehicle on the side of a dirt road at dusk with its parking lights on, the officer had a sense that something was wrong, and the "road safety check" that constituted the seizure

was based solely on safety and welfare considerations); *see also State v. Deneui*, 775 N.W.2d 221, 242 (S.D. 2009) ("Modern society has come to see the role of police officers as more than basic functionaries enforcing the law. From first responders to the sick and injured, to interveners in domestic disputes, and myriad instances too numerous to list, police officers fulfill a vital role where no other government official can."). As these courts have demonstrated, there are countless situations where government intrusion into individual privacy for the purposes of rendering aid is reasonable, regardless of whether criminal activity is afoot. We find the analysis utilized by these courts persuasive, and we can identify no reason why the community caretaking exception should not apply in North Carolina when it has been recognized by the United States Supreme Court and widely adopted by a majority of state courts throughout the country.

Thus, we now formally recognize the community caretaking exception as a means of establishing the reasonableness of a search or seizure under the Fourth Amendment. *See State v. Browning*, 28 N.C. App. 376, 379, 221 S.E.2d 375, 377 (1976) (adopting a new rule of law based on well-reasoned decisions in other jurisdictions that was consistent with, although not directly supported by, precedent from the North Carolina Supreme Court). In recognizing

this exception, we must apply a test that strikes a proper balance between the public's interest in having officers help citizens when needed and the individual's interest in being free from unreasonable governmental intrusion. *See State v. Scott*, 343 N.C. 313, 327, 471 S.E.2d 605, 613-14 (1996) ("In creating exceptions to the general [warrant requirement], this Court must consider the balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.") (citation and quotation marks omitted).

Despite its wide recognition, "[n]o single set of specific requirements for applicability of the community caretaker exception has been adopted by a majority of those states recognizing the exception." *Ullom*, 705 S.E.2d at 122.

Courts are split as to how the community caretaking doctrine should be classified from a Fourth Amendment perspective. A minority of jurisdictions characterizes community caretaking activities as consensual police-citizen encounters which do not rise to the level of "searches" or "seizures" under the Fourth Amendment. *See Moats*, 403 S.W.3d at 182, 187 n. 8 ("[T]he community caretaking function exists [in Tennessee] within the third tier of consensual police-citizen encounters that do not require probable cause or reasonable suspicion[.]"). However,

North Carolina courts, as well as most courts in other jurisdictions, recognize that police interactions with citizens that do not amount to "searches" or "seizures" under the meaning of the Fourth Amendment do not trigger its safeguards. *See State v. Sugg*, 61 N.C. App. 106, 108-9, 300 S.E.2d 248, 250 (1983); *see also People v. Luedemann*, 857 N.E.2d 187, 198-99 (Ill. 2006). Thus, we need not create an exception to the Fourth Amendment under the community caretaking doctrine to justify already permissible police-citizen interactions. *See State v. Isenhour*, 194 N.C. App. 539, 544-45, 670 S.E.2d 264, 268-69 (2008) (holding that reasonable suspicion was not required to justify an interaction that did not amount to a seizure under the Fourth Amendment).

There are also competing viewpoints as to the manner in which the subjective motivation of an officer should be taken into account when applying the community caretaking exception. A primary concern amongst courts which apply these tests is that the community caretaking exception not serve as pretext for impermissible criminal investigation. *See, e.g.*, *Com. v. Waters*, 456 S.E.2d 527, 530 (Va. Ct. App. 1995) ("No seizure, however limited, is a valid exercise of the community caretaking function if credible evidence indicates that the stop is a pretext for investigating criminal activity."). Some courts, like those in

the state of Washington, have adopted tests which contain both objective and subjective requirements and only allow a search or seizure if the officer's motivation is not primarily related to criminal investigation. *See State v. Angelos*, 936 P.2d 52, 54 (Wash. Ct. App. 1997) ("[T]he [government] must show that the officer, both subjectively and objectively, is actually motivated by a perceived need to render aid or assistance. The search must not be primarily motivated by intent to arrest and seize evidence.") (citation and quotation marks omitted). Other courts, like the Fourth Circuit and the Wisconsin Supreme Court, hold that a warrantless search or seizure will be upheld if there is an objectively reasonable basis for the community caretaking action, regardless of a coinciding subjective intent on the officer's part to investigate crime. *See State v. Kramer*, 759 N.W.2d 598, 608 (Wis. 2009) ("[W]e conclude that the 'totally divorced' language from *Cady* does not mean that if the police officer has any subjective law enforcement concerns, he cannot be engaging in a valid community caretaker function. Rather, we conclude that in a community caretaker context, when under the totality of the circumstances an objectively reasonable basis for the community caretaker function is shown, that determination is not negated by the officer's subjective law enforcement concerns."); *United*

*States v. Newbourn*, 600 F.2d 452, 456 (4th Cir. 1979) ("An interest in furthering a criminal investigation supplements justifiable concern about hazards presented by an automobile's contents; it does not negate it, and *Cady* supports the warrantless intrusion. Thus the warrantless search should be upheld, whatever the policeman's subjective state of mind[,] if the objective facts present a reasonable basis for a belief that there is a potential danger similar to or greater than that presented in *Cady*, which danger should be inactivated.").

The North Carolina Supreme Court, in two relatively recent opinions, has made clear that the subjective mentality of a police officer will not make a seizure under the *Terry* doctrine unconstitutional if the intrusion was objectively reasonable under the totality of the circumstances. *See State v. Barnard*, 362 N.C. 244, 248, 658 S.E.2d 643, 645 (2008) (noting that "[t]he constitutionality of a traffic stop depends on the objective facts, not the officer's subjective motivation" in holding that an officer's subjective mistake of law did not cause a traffic stop to be unconstitutional where there was articulable, reasonable suspicion that the individual was violating a different, actual law), *cert. denied*, 555 U.S. 914, 172 L. Ed. 2d 198 (2008); *State v. Heien*, 366 N.C. 271, 283, 737 S.E.2d 351, 359 (2012) (holding

that where an officer's subjective mistake of law was itself objectively reasonable, there may still be reasonable suspicion to justify a warrantless traffic stop). Thus, in keeping with the "foundational principle" recognized by our Supreme Court that the Fourth Amendment requires only that an officer's actions be "objectively reasonable in the circumstances," *Heien*, 366 N.C. at 278, 737 S.E.2d at 356 (citation omitted), we adopt an objective method of inquiry into the purpose of a seizure in the community caretaking context. The public safety concerns which underlie the community caretaking exception are not mutually exclusive of criminal prevention and investigation, and therefore we decline to formulate a test where existence of the latter negates the former. As the Wisconsin Supreme Court aptly noted, "to interpret . . . [*Cady*] to mean that an officer could not engage in a community caretaker function if he or she had any law enforcement concerns would, for practical purposes, preclude police officers from engaging in any community caretaker functions at all. This result is neither sensible nor desirable." *Kramer*, 759 N.W.2d at 609.

After assessing the analytical methods developed by courts in other jurisdictions, we find that the current three-pronged test used by courts in Wisconsin in applying the community caretaking exception provides a flexible framework within which officers can

safely perform their duties in the public's interest while still protecting individuals from unreasonable government intrusions. *See State v. Anderson*, 417 N.W.2d 411, 414 (Wis. Ct. App. 1987), *rev'd on other grounds*, 454 N.W.2d 763 (Wis. 1990); *Kramer*, 759 N.W.2d at 608. Under this test, which we now adopt, the State has the burden of proving that: (1) a search or seizure within the meaning of the Fourth Amendment has occurred; (2) if so, that under the totality of the circumstances an objectively reasonable basis for a community caretaking function is shown; and (3) if so, that the public need or interest outweighs the intrusion upon the privacy of the individual. *See Anderson*, 417 N.W.2d at 414; *Kramer*, 759 N.W.2d at 608. Relevant considerations in assessing the weight of public need against the intrusion of privacy include, but are not limited to:

> (1) the degree of the public interest and the exigency of the situation; (2) the attendant circumstances surrounding the seizure, including time, location, the degree of overt authority and force displayed; (3) whether an automobile is involved; and (4) the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished.

*Anderson*, 417 N.W.2d at 414. We note that many courts which apply a similar balancing test place great weight on the exigency of the situation, with some holding that only imminent danger to life or

limb can outweigh the individual's privacy interest. *See, e.g., Provo City v. Warden*, 844 P.2d 360, 364-65 (Utah Ct. App. 1992), *aff'd*, 875 P.2d 557 (Utah 1994). Because such a requirement may prevent aid in situations where danger to life and limb may not be imminent, but could be prevented by swift action,[2] we decline to make imminent danger to life or limb a required element of our test. However, we agree with the proposition espoused by many courts that this exception should be applied narrowly and carefully to mitigate the risk of abuse. *See, e.g. State v. Rinehart*, 617 N.W.2d 842 (S.D. 2000); *Wright v. State*, 7 S.W.3d 148 (Tex. Crim. App. 1999); *see also United States v. Dunbar*, 470 F. Supp. 704, 708 (D. Conn. 1979) ("The investigative stop authority announced in *Terry v. Ohio* has led to cases where the officer says, 'He looked suspicious.' The Fourth Amendment stands against initiating a new line of cases in which the officer says, 'I thought he was lost.'") (citation and quotation omitted), *aff'd*, 610 F.2d 807 (2d Cir. 1979).

Having set out a community caretaking exception that we feel properly frames our inquiry into the reasonableness of a search or seizure under the Fourth Amendment, we must apply our rule to the

---

[2] For example, where an officer executes a search or seizure to fix a gas leak before an explosion might have occurred.

facts of this case. After careful review, we hold that all three elements are met. First, it is uncontested that the traffic stop was a seizure under the meaning of the Fourth Amendment. *See Styles*, 362 N.C. at 414, 665 S.E.2d at 439. Second, given that Officer Kreigsman witnessed defendant strike a large animal and saw sparks fly when her car struck the road, there was an objectively reasonable basis under the totality of the circumstances to conclude that the seizure was predicated on the community caretaking function of ensuring the safety of defendant and her vehicle. Third, as discussed below, we find that the public need and interest in having Officer Kreigsman seize defendant outweighed her privacy interest in being free from the intrusion.

The facts that weigh in favor of defendant are as follows. First, the trial court entered an uncontested finding of fact that defendant was only affected by the collision with the animal at the point of impact. According to Officer Kreigsman, at that moment "a little bit of sparks [came] from the rear end where the car struck the roadway. And then the car continued on." Officer Kreigsman followed defendant at a steady speed for almost two miles without noticing anything which indicated that defendant was injured or otherwise unfit to drive, or that the vehicle itself

could not be operated safely. Although later inspection revealed that the front of defendant's car was damaged by the collision, Officer Kreigsman was unaware of this fact at the time he executed the seizure. Thus, the circumstances lacked an exigency that would weigh in favor of police intervention. Second, this was a substantial intrusion on defendant's liberty. Unlike a situation where an officer might approach an already stopped vehicle to check on its occupants, Officer Kreigsman interrupted defendant's mobility by executing a traffic stop, using his blue lights and siren as displays of overt authority to do so. The United States Supreme Court has noted that traffic stops may create "substantial anxiety" and may be brought about by an "unsettling show of authority;" further, they "interfere with freedom and movement" and are "inconvenient." *Delaware v. Prouse*, 440 U.S. 648, 657, 59 L. Ed. 2d 660, 666 (1979). Thus, the "possibly unsettling show of authority," *id.*, used to seize defendant, in addition to the interruption of her freedom to travel, weigh in favor of defendant's argument that the seizure was unreasonable.

Although these factors support defendant's argument, we hold that the public's need and interest in Officer Kreigsman's actions outweigh defendant's competing privacy interest. First, the seizure occurred at nighttime in what was described by Officer

Kreigsman as a rural and dimly lit stretch of road. Since there was a lower probability that defendant could have gotten help from someone if she needed it, compared to if she had a similar collision during the day time in a highly populated area, this setting weighs in favor of the State's argument that the public need or interest was furthered by Officer Kreigsman's conduct. Second, Officer Kreigsman witnessed defendant strike a large animal with her vehicle and saw sparks when the car bounced on the road. Thus, he was able to identify specific facts which led him to believe that help may have been needed, rather than a general sense that something was wrong. Finally, defendant was operating a vehicle when she was seized rather than enjoying the privacy of her home. As this Court has noted, "[o]ne has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects . . . . It travels public thoroughfares where both its occupants and its contents are in plain view." *State v. Francum*, 39 N.C. App. 429, 432, 250 S.E.2d 705, 707 (1979) (quoting *Cardwell v. Lewis*, 417 U.S. 583, 590, 41 L. Ed. 2d 325, 335 (1974)). Thus, the lessened expectation of privacy weighs in favor of the State's argument that the seizure was reasonable.

Furthermore, because defendant was involved in a motor vehicle collision, a number of relevant statutory provisions are implicated. N.C. Gen. Stat. § 20-4.01(33b) defines a "reportable crash" as one resulting in death or injury to a human being or in property damage of over $1000.00. N.C. Gen. Stat. § 20-4.01(4b) defines a "crash" as "[a]ny event that results in an injury or property damage attributable directly to the motion of a motor vehicle or its load. The terms collision, accident and crash and their cognates are synonymous." N.C. Gen. Stat. § 20-166.1(e) states that the "appropriate law enforcement agency must investigate a reportable accident." In addition to the other factors that weigh in favor of the State, these statutes underscore the significance of the public interest involved. Based upon Officer Kreigsman's statutory duty under section 20-166.1(e), he had an objectively reasonable basis to seize defendant in order to ascertain the nature and extent of the damage to defendant's vehicle. Thus, when considering this statutory duty along with all of the other factors that support the public need and interest in Officer Kreigsman's actions, the scales are tipped in favor of the State.

After weighing these facts, keeping in mind the general principle that the community caretaking exception should be

applied narrowly to prevent potential abuses, we hold that the public need and interest did outweigh defendant's privacy interest in being free from government seizure here. Thus, because the stop fits into the community caretaking exception as we apply it, it was reasonable under the Fourth Amendment.

## Conclusion

After careful review, we recognize the community caretaking doctrine as a valid exception to the warrant requirement of the Fourth Amendment and hold that Officer Kreigsman's seizure of defendant fits into this exception as we apply it. Thus, we affirm the trial court's order denying defendant's motion to suppress.


AFFIRMED.

Judges BRYANT and STEELMAN concur.