McCULLOUGH, Judge.
 

 *853
 
 Eric Preston Sawyers ("defendant") appeals from judgment entered upon his plea of guilty to driving while impaired. Defendant argues that the trial court erred by denying his motion to suppress. For the reasons stated herein, we affirm the order of the trial court.
 

 I.
 
 Background
 

 On 12 November 2011, defendant was arrested and issued a citation for driving while impaired in violation of N.C. Gen.Stat. § 20-138.1.
 

 On 29 April 2013, defendant filed a "Motion to Dismiss" charges against him alleging statutory and constitutional violations regarding his right to pre-trial release, his right to obtain additional chemical analysis, and his right to have an opportunity to obtain evidence. On the same date, defendant filed a "Motion to Suppress Evidence Obtained without Reasonable Suspicion to Stop and Seize Defendant" and a "Motion to Suppress EC/IR II Test Results."
 

 *854
 
 Following a hearing held on 27 September 2013, the trial court entered an order on 15 October 2013 denying defendant's motion to dismiss. The trial court made the following pertinent findings of fact:
 

 3. That Trooper Keller ... assisted Sergeant Dorty with the DWI investigation and thereafter arrested the defendant at 2:26am for Driving While Impaired[.]
 

 ....
 

 5. That Trooper Keller then transported the defendant to the Charlotte Mecklenburg detention facility for an EC/IR II test of his breath for alcohol, arriving at approximately 3:05am.
 

 6. That the defendant was taken to the nurse, fingerprinting, and image capturing until 3:34am.
 

 *755
 
 7. That Trooper Keller advised the defendant of his rights to a chemical analysis of his breath and the defendant reviewed and acknowledged the rights form regarding chemical analysis at 3:45am, but refused to sign....
 

 8. That the defendant was allowed to retrieve phone numbers from his phone and make phone calls. He called his mother Christine Sawyers at approximately 4:00am to let her know he was in jail and she needed to come get him,
 
 but there was no mention of observing the EC/IR II testing procedures.
 

 9. That Christine Sawyers lives in South Charlotte and arrived within approximately 30 minutes of receiving the defendant's phone call.
 

 10. That a witness did not appear for the defendant within the requisite 30 minutes, so Trooper Keller requested the defendant submit to a test of his breath for alcohol at 4:19am and 4:22 am. The lower of the two readings was .15 g/210L....
 

 (emphasis added). The trial court concluded:
 

 1. That there was no substantial violation of the United States Constitution, the North Carolina Constitution, or any statutory violation.
 

 2. That the defendant was informed of his right to have a witness present and was allowed a witness, Christine
 
 *855
 
 Sawyers, at the Mecklenburg County Jail, who was able to communicate and speak to the defendant for 30 minutes and assist in forming his defense.
 

 3. That there was no evidence that anyone who came to the Mecklenburg County Jail to see or speak with defendant was denied that right.
 

 A hearing on defendant's motions to suppress was held during the 15 October 2014 criminal session of Mecklenburg County Superior Court.
 

 In regards to defendant's "Motion to Suppress Evidence Obtained without Reasonable Suspicion to Stop and Seize Defendant," the State offered the testimony of Sergeant Henry Hill Dorty, Jr. ("Sergeant Dorty") with the North Carolina Highway Patrol. Sergeant Dorty testified that on 12 November 2011 at 2:26 a.m., he was on patrol on Tryon Street in downtown Charlotte. He was sitting stationary in his vehicle at a stoplight. Sergeant Dorty observed defendant walking down the sidewalk and noticed that he had a slight limp. Sergeant Dorty testified that directly behind defendant was what appeared to be a homeless male dragging a female. The female "appeared to either be very intoxicated or drugged." Defendant stopped at a car on the side of the road and opened the back door behind the driver's seat. Defendant and the other male put the female in the backseat of the vehicle. Dorty testified that "I didn't know whether she was being kidnapped, if she was in danger or what the situation was." Thereafter, defendant got into the driver's seat and the other male got into the front passenger seat of the car. Defendant got into traffic two car lengths in front of Sergeant Dorty. Sergeant Dorty testified that he stayed behind defendant and planned to stop defendant's vehicle "[t]o investigate to see if the female in the vehicle was okay, what was going on." After defendant made two turns, Sergeant Dorty activated his blue lights and pulled defendant over.
 

 The trial court denied defendant's motion to suppress for lack of reasonable suspicion by stating as follows:
 

 THE COURT: ... I am persuaded, based on the evidence presented and the very eloquent arguments of counsel for both sides, the authorities cited, that Trooper Dorty had a reasonable and articulable suspicion to initiate the stop and that the stop falls within the community caretaker exception to the Fourth Amendment.
 

 In regards to defendant's "Motion to Suppress EC/IR II Test Results,"
 

 *856
 
 Trooper Robert B. Keller ("Trooper Keller") and defendant testified. Trooper Keller with the North Carolina State Highway Patrol testified that he came into contact with defendant during the early hours of 12 November 2011. Trooper Keller was contacted by Sergeant Dorty. Subsequent to arriving on the scene, Trooper Keller formed the opinion that defendant was impaired and arrested defendant for driving while impaired at 2:26 a.m. Defendant was taken to "Mecklenburg County intake
 
 *756
 
 downtown" and entered the room containing the Intoximeter ECIR/II machines. Defendant's rights were read to him at 3:45 a.m. and defendant refused to sign the form acknowledging his rights. Defendant called for a witness using the landline provided by the sheriff's department and spoke with his mother at 3:59 a.m. When asked whether Trooper Keller had a disagreement with defendant over defendant's access to his cell phone, Trooper Keller testified that he did not "recall communication a whole lot about the cell phone." Trooper Keller further testified that he could not recall whether he heard defendant asking his mother to come down to the jail or whether he asked his mother to serve as a witness for the breath test. Trooper Keller testified that to his recollection, defendant failed to indicate to him at 3:45 a.m. that he had a witness coming to view the testing procedures and that if defendant had so indicated, Trooper Keller would have waited thirty minutes for the witness to arrive. Defendant provided two samples at 4:19 a.m. and 4:22 a.m. Trooper Keller testified that between 3:45 a.m. and 4:19 a.m., he was not notified that anyone had arrived to view the testing procedures.
 

 Defendant testified that he and Trooper Keller had disagreements regarding signing paperwork and accessing his cell phone so that he could access his attorney's phone number. Defendant recalled Trooper Keller reading him his rights as it pertained to submitting to a test of his breath but testified that he refused to sign the rights form. At 3:59 a.m. defendant made a phone call to his mother. Defendant testified that the purpose of calling his mother was because he "wanted a witness to watch the Breathalyzer test." It would have taken ten to fifteen minutes for his mother to arrive at the jail. Defendant testified that to his knowledge, his mother arrived within thirty minutes of his phone call.
 

 The trial court adopted the findings of fact made in the 15 October 2013 order denying defendant's motion to dismiss. The trial court denied defendant's motion to suppress evidence from defendant's breath test and stated as follows:
 

 THE COURT: ... And I do find that the State has met the burden of producing evidence, which hasn't been impeached, that Trooper Keller observed the defendant.
 

 *857
 
 The standard is not-as I understand it, there's not any authority that says the standard is that you're not allowed to fill out paperwork or talk on the phone or do anything else during that observation period. So I'm going to find that the State's met its burden on that. And for all those reasons, I'm going to deny the motion to suppress[.]
 

 On 15 October 2014, the trial court entered an order, denying both of defendant's motions to suppress. Thereafter, defendant pled guilty to driving while impaired while reserving his right to appeal the denial of his motions to suppress. On the same date, the trial court entered judgment, sentencing defendant to a DWI Level Five punishment. Defendant was sentenced to 30 days in jail. This sentence was suspended and defendant was placed on supervised probation for a term of 12 months. On 16 October 2014, defendant entered notice of appeal.
 

 II.
 
 Standard of Review
 

 Review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial [court]'s underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the [court]'s ultimate conclusions of law."
 
 State v. Salinas,
 

 366 N.C. 119
 
 , 123,
 
 729 S.E.2d 63
 
 , 66 (2012) (citation omitted). "The trial court's conclusions of law ... are fully reviewable on appeal."
 
 State v. Hughes,
 

 353 N.C. 200
 
 , 208,
 
 539 S.E.2d 625
 
 , 631 (2000).
 

 III.
 
 Discussion
 

 Defendant presents two issues on appeal. Defendant argues that the trial court erred by: (A) denying defendant's motion to suppress where the facts demonstrated that Sergeant Dorty did not have the reasonable articulable suspicion needed to justify an investigatory stop and (B) denying defendant's motion to suppress the breath test results where the seizure of defendant's cell phone prevented defendant from obtaining a witness in time to observe the test. Before we
 
 *757
 
 reach the merits of defendant's appeal, we first address a preliminary issue.
 

 Notice of Appeal
 

 Defendant has filed a petition for writ of certiorari in which defendant concedes that while he intended to appeal "from all adverse decisions against him," through miscommunication or inadvertent error, his "trial counsel inadvertently failed to specifically state that the appeal was from both the denial of the suppression motions and also from the
 
 *858
 
 Judgment entered on October 15, 2014." Accordingly, defendant requests that our Court issue a writ of certiorari pursuant to the North Carolina Rules of Appellate Procedure Rule 21(a)(1). Rule 21(a)(1) provides that:
 

 [t]he writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action, or when no right of appeal from an interlocutory order exists, or for review pursuant to N.C.G.S. § 15A-1422(c)(3) of an order of the trial court ruling on a motion for appropriate relief.
 

 N.C. R.App. P. Rule 21(a)(1) (2016). Our Court has previously ruled that " '[a]ppropriate circumstances' may include when a defendant's right to appeal has been lost because of a failure of his or her trial counsel to give proper notice of appeal."
 
 State v. Gordon,
 

 228 N.C.App. 335
 
 , 337,
 
 745 S.E.2d 361
 
 , 363 (2013). Because defendant's right to appeal from the 15 October 2014 judgment was lost as a result of no fault of his own, we exercise our discretion and allow defendant's petition for writ of certiorari pursuant to Rule 21(a)(1).
 

 A.
 
 Motion to Suppress for Lack of Reasonable Suspicion
 

 In his first argument on appeal, defendant contends that the trial court erred in denying his motion to suppress where the facts demonstrated that Sergeant Dorty did not have the reasonable articulable suspicion necessary to justify an investigatory stop, thereby violating his rights under the Fourth Amendment to the United States Constitution and Article I, § 20 of the North Carolina Constitution to be free from unreasonable seizures. Defendant also argues that the trial court erred by applying the community caretaking doctrine as an exception to the warrant requirement of the Fourth Amendment. We disagree.
 

 The Fourth Amendment protects individuals against unreasonable searches and seizures and the North Carolina Constitution provides similar protection. A traffic stop is a seizure even though the purpose of the stop is limited and the resulting detention quite brief. Traffic stops have been historically reviewed under the investigatory detention framework first articulated in
 
 Terry v. Ohio,
 

 392 U.S. 1
 
 ,
 
 88 S.Ct. 1868
 
 ,
 
 20 L.Ed.2d 889
 
 (1968). Under
 
 Terry
 
 and subsequent cases, a traffic stop is permitted if the officer has a reasonable, articulable suspicion
 
 *859
 
 that criminal activity is afoot.
 

 State v. Smith,
 

 192 N.C.App. 690
 
 , 693,
 
 666 S.E.2d 191
 
 , 193 (2008) (citations omitted). "Reasonable suspicion requires that the stop be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training."
 
 State v. Lopez,
 

 219 N.C.App. 139
 
 , 145,
 
 723 S.E.2d 164
 
 , 169 (2012) (citation omitted). "All the State is required to show is a minimal level of objective justification, something more than an unparticularized suspicion or hunch. A court must consider the totality of the circumstances in determining whether the officer possessed a reasonable and articulable suspicion to make an investigatory stop."
 
 State v. Brown,
 

 213 N.C.App. 617
 
 , 619,
 
 713 S.E.2d 246
 
 , 248 (2011) (citations and quotation marks omitted).
 

 After thoroughly reviewing the record, we hold that Sergeant Dorty had specific and articulable facts sufficient to support an investigatory stop of defendant. Sergeant Dorty testified that in the early morning hours of 12 November 2011 at 2:26 a.m., he was on patrol on Tryon Street in downtown Charlotte. He was sitting stationary in his vehicle at a stoplight when he observed defendant walking down the street with a slight limp. Sergeant Dorty observed that directly
 
 *758
 
 behind defendant was another male, who appeared to be homeless, dragging an "either very intoxicated or drugged" female down the street. Defendant and the other male placed the female in defendant's vehicle, defendant and the other male entered the vehicle, and defendant's vehicle left the scene. Sergeant Dorty testified that he was unsure whether the female "was being kidnapped, if she was in danger or what the situation was." Sergeant Dorty did not believe that the other male was with defendant and the female and wanted to investigate "to see if the female in the vehicle was okay, what was going on." Considering the totality of the circumstances, we hold that defendant's investigatory stop was justified by Sergeant Dorty's reasonable suspicion that defendant was involved in criminal activity. Therefore, we hold that the trial court did not err by denying defendant's motion to suppress on this ground.
 

 In addition to holding that there was reasonable articulable suspicion to conduct an investigatory stop of defendant, the trial court also held that the stop fell within the community caretaker exception to the Fourth Amendment. In
 
 State v. Smathers,
 

 232 N.C.App. 120
 
 ,
 
 753 S.E.2d 380
 
 (2014), our Court formally recognized the community caretaking doctrine as an exception to the warrant requirement under the Fourth Amendment to the United States Constitution.
 

 *860
 

 Id.
 
 at 122,
 
 753 S.E.2d at 382
 
 . In reference to a large majority of state courts recognizing this doctrine as an exception, our Court noted that:
 

 [t]he overarching public policy behind this widespread adoption is the desire to give police officers the flexibility to help citizens in need or protect the public even if the prerequisite suspicion of criminal activity which would otherwise be necessary for a constitutional intrusion is nonexistent. The doctrine recognizes that, in our communities, law enforcement personnel are expected to engage in activities and interact with citizens in a number of ways beyond the investigation of criminal conduct. Such activities include a general safety and welfare role for police officers in helping citizens who may be in peril or who may otherwise be in need of some form of assistance.
 

 Id.
 
 at 125,
 
 753 S.E.2d at 384
 
 (citation omitted). Our Court adopted a three-pronged test in applying the community caretaking exception:
 

 the State has the burden of proving that: (1) a search or seizure within the meaning of the Fourth Amendment has occurred; (2) if so, that under the totality of the circumstances an objectively reasonable basis for a community caretaking function is shown; and (3) if so, that the public need or interest outweighs the intrusion upon the privacy of the individual. Relevant considerations in assessing the weight of public need against the intrusion of privacy include, but are not limited to: (1) the degree of the public interest and the exigency of the situation; (2) the attendant circumstances surrounding the seizure, including time, location, the degree of overt authority and force displayed; (3) whether an automobile is involved; and (4) the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished.
 

 Id.
 
 at 128-29,
 
 753 S.E.2d at 386
 
 (citations omitted). "[T]his exception should be applied narrowly and carefully to mitigate the risk of abuse."
 
 Id.
 
 at 129,
 
 753 S.E.2d at 386
 
 .
 

 We must now apply the three-pronged test to the circumstances in our present case. First, it is undisputed that the traffic stop of defendant was a seizure under the Fourth Amendment of the United States Constitution. Second, given that Sergeant Dorty observed defendant and what appeared to be a homeless male dragging a female who seemed
 
 *861
 
 to "either be very intoxicated or drugged" into defendant's vehicle, there was an objectively reasonable basis under the totality of the circumstances to conclude that the seizure was based on the community caretaking function of ensuring the safety of the female. Sergeant Dorty testified that he was unsure whether the female "was being kidnapped, if she was in danger or what the situation was." Third, the public need or interest in having defendant seized outweighed his privacy interest in being free from the intrusion. Sergeant Dorty observed the female who was either
 
 *759
 
 intoxicated or drugged being put in the backseat of defendant's vehicle by defendant and another male who "appeared to be homeless and didn't appear to be with these two people that I saw him with." Defendant and the other male entered the vehicle and began driving away from the scene. Therefore, the degree of public interest in ensuring the safety and well-being of the female was high and the fact that defendant was driving away in a vehicle with the female as a passenger contributed to the exigency of the situation. Furthermore, defendant was operating a vehicle when he was seized rather than enjoying the privacy of his own home, thereby lessening his expectation of privacy.
 
 See
 

 Smathers,
 

 232 N.C.App. at 131
 
 ,
 
 753 S.E.2d at 387
 
 (stating that "[o]ne has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects.... It travels public thoroughfares where both its occupants and its contents are in plain view") (citation omitted).
 

 Based on the foregoing, we hold that the public need and interest outweighed defendant's privacy interest in being free from government seizure and that defendant's seizure fit within the community caretaking exception as set out in
 
 Smathers.
 
 Accordingly, we hold that the trial court did not err by applying the community caretaking exception and affirm the trial court's order denying defendant's motion to suppress.
 

 B.
 
 Motion to Suppress Breath Test Results
 

 In his second argument on appeal, defendant asserts that the trial court erred by denying his motion to suppress the results of his breath test where he was deprived of a reasonable opportunity to arrange to have a witness observe his breath test. Specifically, defendant argues that officers deprived defendant access to his cell phone address book, which in turn impeded his ability to contact a witness in a timely manner.
 

 Defendant directs our attention to North Carolina General Statutes section 20-16.2(a)(6) regarding his right to call a witness to view the administration of a chemical breath test. N.C. Gen.Stat. § 20-16.2(a)(6) provides as follows, in pertinent part:
 

 *862
 
 Any law enforcement officer who has reasonable grounds to believe that the person charged has committed the implied-consent offense may obtain a chemical analysis of the person.
 

 Before any type of chemical analysis is administered the person charged shall be taken before a chemical analyst authorized to administer a test of a person's breath or a law enforcement officer who is authorized to administer chemical analysis of the breath, who shall inform the person orally and also give the person a notice in writing that:
 

 ....
 

 You may call an attorney for advice and select a witness to view the testing procedures remaining after the witness arrives, but the testing may not be delayed for these purposes longer than 30 minutes from the time you are notified of these rights. You must take the test at the end of 30 minutes even if you have not contacted an attorney or your witness has not arrived.
 

 N.C. Gen.Stat. § 20-16.2(a)(6) (2015).
 

 After careful review, we hold that the record evidence supports the trial court's conclusion that police officers complied with the requirements set out in N.C. Gen.Stat. § 20-16.2(a)(6) as defendant's first breath test was not administered until more than thirty minutes after defendant was informed of his rights. Trooper Keller testified that defendant was arrested at 2:26 a.m. on 12 November 2011 for driving while impaired. Defendant was taken to "Mecklenburg County intake downtown" and entered the room containing the Intoximeter ECIR/II machines. Trooper Keller read defendant's rights to him at 3:45 a.m., however, defendant refused to sign the form acknowledging his rights. Trooper Keller testified that between 3:45 a.m. and 3:59 a.m., defendant was not prevented from using the telephone. Defendant called his mother using a landline provided by the sheriff's department at 3:59 a.m. Trooper Keller could not recall whether he heard defendant asking his mother to come down to the jail or whether he asked
 
 *760
 
 his mother to serve as a witness for the breath test. Defendant failed to indicate to Trooper Keller at 3:45 a.m. that he had a witness coming to view the testing procedures. Trooper Keller testified that if defendant had indicated to him that he had a witness on the way, Trooper Keller would have waited thirty minutes for the witness to arrive. Defendant provided two breath samples at 4:19 a.m. and 4:22 a.m. Trooper Keller testified that between 3:45 a.m.
 
 *863
 
 and 4:19 a.m., he was not notified that anyone had arrived to view the testing procedures.
 

 Defendant's argument that he was denied access to his cell phone in order to retrieve numbers is without merit. The trial court adopted the findings of fact entered in the 15 October 2013 order denying defendant's motion to dismiss and defendant does not challenge any specific findings on appeal. Finding of fact number 8 indicates that defendant was "allowed to retrieve phone numbers from his phone and make phone calls." This finding is supported by the testimony of Deputy James Ingram, of the Mecklenburg County Sheriff's Office, at the hearing held on 27 September 2013:
 

 Q. Looking towards the bottom of the page where the notes are listed, we've gone through some of these. It looks like at 3:18 the defendant retrieved numbers from his phone; is that correct?
 

 A. Correct.
 

 Accordingly, we hold that the trial court did not err by denying defendant's motion to suppress the results of his breath test.
 

 IV.
 
 Conclusion
 

 Based on the foregoing reasons, we affirm the order of the trial court denying defendant's motions to suppress.
 

 AFFIRMED.
 

 Judges BRYANT and STEPHENS concur.