ARROWOOD, Judge.
Cypress Monique Brown ("defendant") appeals the denial of her motion to suppress from judgment entered on her guilty plea to driving while impaired ("DWI") pursuant to North Carolina v. Alford , 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (hereinafter " Alford plea"). For the following reasons, we reverse.
I. Background
Defendant received a citation for DWI after being stopped on a rural road outside of Taylorsville by an Alexander County sheriff's deputy at approximately 3:00 in the morning on 5 August 2017. Defendant was convicted of DWI in Alexander County District Court on 16 April 2018 and appealed for a trial de novo in Superior Court.
On 26 July 2018, defendant filed a motion to suppress all evidence on the basis that the stop was illegal. Defendant specifically asserted that there was no reasonable suspicion to stop her. The motion to suppress was accompanied by an affidavit of defendant's counsel asserting that the deputy used the mere utterance of profanity as a pretext to initiate a traffic stop of defendant. Defendant's motion to suppress was heard in Alexander County Superior Court before the Honorable Julia Lynn Gullett on 26 July 2018. The deputy who pulled defendant over was the only witness to testify at the hearing. On 11 October 2018, the trial court entered an order denying defendant's motion to suppress. The trial court made the following findings based on the deputy's testimony:
1. On August 5th of 2017, Deputy Hoyle, an officer with eight and half years of experience as a deputy for the Alexander County Sheriff's Office, was standing outside his patrol car in the parking lot of a closed gas station between 2:20 and 2:25 in the morning, and that there were several other officers also in the parking lot and they all had marked cars.
2. Further, that there were no businesses open for several miles in either direction, and that Deputy Holye [sic] saw a vehicle come down the road. He heard yelling from inside the vehicle and he heard the words, "mother fucker". [sic]
3. Deputy Hoyle testified in court that he was concerned that someone might be involved in a domestic situation or an argument of some time. [sic] That he got in his patrol car and caught up with the vehicle from which he heard the words.
4. The vehicle then slowed down below the 55-mile per hour speed limit.[1] The Court further finds that there is a road sign in the area suggesting a 45 miles per hour speed limit because of curves.
5. The officer testified that he waited until they got to a lighted area after the curves and initiated the traffic stop to make sure everybody was okay. The Court finds that the car pulled past the *536 lighted parking lot and pulled over on the side of the road.
6. The Court further finds that the deputy did not observe any violations of the rules of the road; that the vehicle stopped at a stop light; that the vehicle appropriately turned right. The deputy observed no weaving, no crossing of any lines, and nothing abnormal about the operation of the vehicle, except for going less than the speed limit.
7. The Court does find that there was a road sign that suggested driving below the speed limit in that area[.]
Based on its findings, the trial court issued the following relevant conclusions:
4. The Court finds that reasonable suspicion requires that an officer have a reasonable and articulable reason for stopping the vehicle.
5. The Court, in this situation, finds that the officer's articulable and reasonable suspicion for stopping the vehicle was a community caretaking function.
6. The Court finds that the officer has indicated that his reason for stopping the vehicle was to make sure everything was okay. That he thought perhaps that there was some type of argument or domestic dispute. That is the reason that he stopped the vehicle.
7. In this matter, the Court finds that, under the totality of those circumstances, it was reasonable for the officer to believe that someone in the vehicle might be in danger and finds that there was reasonable suspicion for the stop.
Following the trial court's denial of her motion to suppress, defendant entered an Alford plea to DWI, reserving her right to appeal the denial of her motion to suppress. The trial court entered an impaired driving judgment on 26 July 2018 sentencing defendant to 60 days in the custody of the Misdemeanant Confinement Program, suspended on condition defendant be placed on unsupervised probation for 12 months. Defendant gave notice of appeal in open court and the trial court stayed judgment pending disposition of this appeal.
II. Discussion
The sole issue on appeal is whether the trial court erred in denying defendant's motion to suppress. Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke , 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "The trial court's conclusions of law ... are fully reviewable on appeal." State v. Hughes , 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).
Defendant does not challenge any specific finding by the trial court except that portion of finding of fact number 6 finding that defendant stopped at a stop light. Both the State and defendant agree that the evidence was that defendant stopped at a stop sign, not a stop light. Despite this error, the significance of the finding is apparent; to show that defendant was adhering to the rules of the road.
Instead of challenging the trial court's findings, the crux of defendant's argument on appeal is that the trial court's findings do not support its conclusion that the stop was proper because the deputy had reasonable suspicion for stopping for a community caretaking function. Defendant first argues the trial court erred by conflating two separate exceptions to the warrant requirement. Nevertheless, defendant contends the record does not support a warrantless stop based on a reasonable suspicion or a community caretaking function. We agree.
This Court explained the relevant search and seizure law in State v. Smathers , 232 N.C. App. 120, 753 S.E.2d 380 (2014).
The Fourth Amendment to the United States Constitution and Article I, Section 20 of the North Carolina Constitution prohibit unreasonable searches and seizures. U.S. Const. amend. IV ; N.C. Const. art. I, § 20. Traffic stops are recognized as seizures under both constitutions. See State v. Styles , 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) ("A traffic stop is a seizure even *537 though the purpose of the stop is limited and the resulting detention quite brief.") (quoting Delaware v. Prouse , 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979) ). Although a warrant supported by probable cause is typically required for a search or seizure to be reasonable, State v. Phillips , 151 N.C. App. 185, 191, 565 S.E.2d 697, 702 (2002), traffic stops are analyzed under the "reasonable suspicion" standard created by the United States Supreme Court in Terry v. Ohio , 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Styles , 362 N.C. at 414, 665 S.E.2d at 439. "Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. The standard is satisfied by some minimal level of objective justification." Id . (citation and quotation marks omitted). "A court must consider 'the totality of the circumstances-the whole picture' in determining whether a reasonable suspicion to make an investigatory stop exists." State v. Watkins , 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (quoting U.S. v. Cortez , 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981) ). "When a defendant in a criminal prosecution makes a motion to suppress evidence obtained by means of a warrantless search, the State has the burden of showing, at the suppression hearing, how the [warrantless search] was exempted from the general constitutional demand for a warrant." State v. Nowell , 144 N.C. App. 636, 642, 550 S.E.2d 807, 812 (2001).
232 N.C. App. at 123, 753 S.E.2d at 382-83.
We agree with defendant that the trial court appears to comingle two separate exceptions to the warrant requirement, the reasonable articulable suspicion standard and the community caretaking standard, when concluding "that the officer's articulable and reasonable suspicion for stopping the vehicle was a community caretaking function."[2] On appeal, we address the standards separately.
In Smathers , this Court, upon the concession of the State, noted that the stop of the defendant was not based on a reasonable articulable suspicion of criminal activity that would permit a warrantless stop of the defendant's vehicle under Terry . 232 N.C. App. at 123, 753 S.E.2d at 383. Other exceptions to the warrant requirement, such as exigent circumstances and the automobile exception were also unhelpful "because they apply only to situations where officers are investigating or preventing criminal activity." Id . at 124, 753 S.E.2d at 383. Instead, this Court adopted the community caretaking doctrine as a valid exception to the warrant requirement, id . at 126, 753 S.E.2d at 384, and held the officer's stop of the defendant after he observed the defendant's vehicle strike an animal that ran into the road fit into the exception and was reasonable under the Fourth Amendment, id . at 131, 753 S.E.2d at 388.
In the present case, the evidence and the trial court's findings give no indication that there was any basis for a traffic stop or a reasonable articulable suspicion of criminal activity to justify a Terry stop. The deputy testified and the trial court found that the sole reason for the stop of defendant's vehicle was that the deputy heard someone in the vehicle yell "mother f*****" as it drove by the location where the deputy was standing with other officers. Whether the deputy was justified in stopping defendant's vehicle under the community caretaking doctrine based on what he heard is a separate and distinct question.
In Smathers , after reviewing methods developed in other jurisdictions, this Court adopted a three-pronged test that it believed "provides a flexible framework within which officers can safely perform their duties in the public's interest while still protecting individuals from unreasonable government intrusions." Id . at 128, 753 S.E.2d at 386. This Court explained that,
[u]nder [the] test, ... the State has the burden of proving that: (1) a search or *538 seizure within the meaning of the Fourth Amendment has occurred; (2) if so, that under the totality of the circumstances an objectively reasonable basis for a community caretaking function is shown; and (3) if so, that the public need or interest outweighs the intrusion upon the privacy of the individual.
Id . at 128-29, 753 S.E.2d at 386. The Court then listed considerations in assessing the weight of the public need or interest against the intrusion of an individual's privacy. Id . at 129, 753 S.E.2d at 386.
We, however, do not reach the balancing of the interests in this case because we do not think the totality of the circumstances establish an objectively reasonable basis for a community caretaking function under the second prong. As stated above, the sole basis for the stop of defendant's vehicle was that the deputy heard someone in the vehicle yell "mother f*****" as it passed by. The deputy testified that he only heard the words "mother f*****" and knew it came from the vehicle because there were no other vehicles on the road. The deputy did not know if the driver or a passenger yelled the words, did not know if there were passengers in the vehicle, did not know if the windows on the vehicle were up or down, and did not know who the words were directed towards. The deputy acknowledged that "[i]t could be directed towards us. It could be a sign of people inside the vehicle fighting. It could have been somebody on the telephone. There are multiple scenarios with that." We do not believe these facts, much less the trial court's findings which we are directed to review on appeal, establish an objectively reasonable basis for a stop based on the community caretaking doctrine.
In Smathers , the Court made clear that "this exception should be applied narrowly and carefully to mitigate the risk of abuse." Id . at 129, 753 S.E.2d at 386. Therefore, as defendant points out, in cases where the community caretaking doctrine has been held to justify a warrantless search, the facts unquestionably suggest a public safety issue. There are no such facts in this case and the State does not direct our attention to any case applying the community caretaking doctrine to facts similar to those in the present case; and we are unable to find any cases.
Given the facts in this case, we hold the yelling of a profanity, which constitutes the totality of the circumstances justifying the stop in this case, did not establish an objectively reasonable basis for a stop based on the community caretaking doctrine. Thus, the trial court erred in denying defendant's motion to suppress in this case.
III. Conclusion
For the reasons discussed, we hold the trial court erred in denying defendant's motion to suppress and we reverse the judgment entered on defendant's Alford plea.
REVERSED.
Judge DILLON concurs.
Judge BRYANT concurs in the result only without separate opinion.

There is no evidence that defendant was ever driving above 55 miles per hour. Rather, Deputy Hoyle testified that he observed defendant slow down to well below 55 miles per hour, never stating that defendant's starting speed was above 55 miles per hour.

We note that the State's argument to the trial court against suppression relied on reasonable articulable suspicion to support the stop based on Terry . On appeal, the State does not even cite Terry and argues only that the stop was proper under the community caretaking exception to the warrant requirement.