DIETZ, Judge.
*149 Defendant Michael Vernon Huddy appeals the trial court's denial of his motion to suppress evidence obtained after a law enforcement officer searched the curtilage of Huddy's home without a warrant. The officer saw a vehicle with its doors open at the back of a 150-yard driveway leading to Huddy's home. Concerned that the vehicle may be part of a break-in or home invasion, the officer drove down Huddy's 150-yard driveway, ran the tags on the vehicle, checked the front door (but did not knock), checked the home's windows, "cleared" the sides of the house, and then went through a gate in a chain-link fence enclosing the home's backyard and approached the storm door at the back of the house, not visible from the street-all without a warrant or probable cause and accompanying exigent circumstances. As the officer approached the back door, he smelled marijuana, which ultimately led to Huddy's arrest and conviction for possession of marijuana.
We hold that the officer's conduct violated the Fourth Amendment and thus Huddy's motion to suppress should have been granted. At the suppression hearing, the State *653 relied on two exceptions to the warrant requirement to justify the officer's search of the curtilage of Huddy's home: the "knock and talk" doctrine and the "community caretaker" doctrine. As explained below, neither exception applies here. First, the State cannot rely on the knock and talk doctrine because the officer did more than merely knock and talk. The officer ran a license plate not visible from the street, walked around the house examining windows and searching for signs of a break-in, and went first to the front door (without knocking) and then to a rear door not visible from the street and located behind a closed gate. These actions went beyond what the U.S. Supreme Court has held are the permissible actions during a knock and talk. Florida v. Jardines , 569 U.S. 1, 133 S.Ct. 1409, 1414, 185 L.Ed.2d 495 (2013).
Likewise, the State cannot rely on the community caretaker doctrine. The presence of a vehicle in one's driveway with its doors open is not the sort of emergency that justifies the community caretaker exception. State v. Smathers , 232 N.C.App. 120, 126, 753 S.E.2d 380, 384 (2014). Accordingly, the trial court erred by denying Huddy's motion to suppress. We reverse the trial court's order and remand for further proceedings.
Facts and Procedural History
On 16 July 2016, around 11:00 a.m., Deputy Tracy Smith of the Guilford County Sherriff's Department was patrolling an area that law enforcement believed was at risk of home invasions or break-ins. Deputy Smith approached Huddy's home and saw a parked vehicle with *150 open doors at the end of a 150-yard driveway leading to the rear of the home. Deputy Smith thought it was unusual for a vehicle to be parked in a driveway with the doors open at that time of day. Deputy Smith also observed that the house was surrounded by trees, which Deputy Smith believed made it susceptible to break-ins.
Deputy Smith drove to the back of the driveway, parked behind the vehicle, and ran the vehicle's license plate. The address on record for the vehicle did not match the address for Huddy's home. Deputy Smith continued to investigate by walking to the front of the house and checking windows and doors for signs of forced entry. Deputy Smith saw that the front door was "covered in cobwebs" and did not appear to be used as the main entrance to the house. Deputy Smith did not knock on the front door. Observing no signs of forced entry, Deputy Smith then "cleared" the sides of the home before walking to the back of the house.
The back yard of Huddy's home was enclosed by a chain-link fence. Deputy Smith opened the gate in that chain-link fence and entered the enclosed back yard. Deputy Smith then approached a storm door on the rear porch, which was not visible from the street. Deputy Smith smelled marijuana in the area around the storm door.
Deputy Smith knocked on the door and Huddy answered. Deputy Smith asked Huddy to verify that he was lawfully present in the house. Huddy first offered his driver's license, which matched the address for the vehicle in the driveway, but not the house. Deputy Smith requested additional verification, and Huddy eventually produced a rental agreement for the house.
Based on the odor of marijuana, Deputy Smith secured a warrant to search the house. Law enforcement later seized a large quantity of marijuana. The State indicted Huddy on 14 September 2015 for possession of marijuana with intent to sell or deliver, possession of marijuana, and possession of marijuana paraphernalia. On 16 February 2016, Huddy moved to suppress the evidence of marijuana seized from the residence. On 4 April 2016, the trial court entered a written order denying the motion.
On 16 May 2016, Huddy entered an Alford plea to one count of possession of marijuana with intent to sell or deliver while reserving his right to appeal the denial of his motion to suppress. The court sentenced Huddy to a 4 to 14 month active sentence, suspended the sentence, and ordered 12 months of supervised probation. Huddy timely appealed.
*151 Analysis
Huddy challenges the denial of his motion to suppress. He contends that the investigating officer violated the Fourth Amendment when he searched throughout the curtilage of Huddy's home to "check the windows, check *654 the doors" for signs of a possible break-in. As explained below, we agree that neither the knock and talk doctrine nor the community caretaker doctrine permitted the officer to conduct this type of warrantless search of the home's curtilage. Accordingly, we reverse the trial court's order and remand for further proceedings.
"The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." State v. Biber , 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011). Unchallenged findings of fact "are deemed to be supported by competent evidence and are binding on appeal." Id. at 168, 712 S.E.2d at 878. "Conclusions of law are reviewed de novo and are subject to full review." Id.
We start by reviewing the Fourth Amendment's core principles. "[W]hen it comes to the Fourth Amendment, the home is first among equals. At the Amendment's very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Florida v. Jardines , 569 U.S. 1, 133 S.Ct. 1409, 1414, 185 L.Ed.2d 495 (2013). This protection extends not only to the interior of one's home, but also to the "curtilage," which is "the area immediately surrounding and associated with the home." Id. As a result, law enforcement ordinarily cannot enter the curtilage of one's home without either a warrant or probable cause and the presence of exigent circumstances that justify the warrantless intrusion. Id.
Courts have recognized several exceptions to this general rule, and the trial court relied on two of these exceptions: the "knock and talk" doctrine and the "community caretaker" doctrine. We address these two exceptions in turn below.
I. Knock and Talk Doctrine
We begin with the knock and talk doctrine. Because "no search of the curtilage occurs when an officer is in a place where the public is allowed to be, such as at the front door of a house," officers are permitted to approach the front door of a home, knock, and engage in consensual conversation with the occupants. State v. Lupek , 214 N.C.App. 146, 151, 712 S.E.2d 915, 919 (2011). Put another way, law enforcement may *152 do what occupants of a home implicitly permit anyone to do, which is "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." Jardines , 133 S.Ct. at 1415.
Importantly, law enforcement may not use a knock and talk as a pretext to search the home's curtilage. Id. at 1416. "[N]o one is impliedly invited to enter the protected premises of the home in order to do nothing but conduct a search." Id. at n.4. Likewise, the knock and talk doctrine does not permit law enforcement to approach any exterior door to a home. An officer's implied right to knock and talk extends only to the entrance of the home that a "reasonably respectful citizen" unfamiliar with the home would believe is the appropriate door at which to knock. Id. at 1415 n.2. This limitation is necessary to prevent the knock and talk doctrine from swallowing the core Fourth Amendment protection of a home's curtilage. Without this limitation, law enforcement freely could wander around one's home searching for exterior doors and, in the process, search any area of a home's curtilage without a warrant.
Under Jardines , the officer in this case did not conduct a permissible knock and talk. The court found-and the record supports-that the officer searched throughout the home's curtilage before going to the back door to knock. Indeed, the officer conceded during the suppression hearing that he was searching for signs of a break-in before he knocked on any door to the home:
Q. You stated that you guess that the driveway was approximately 150 yards, but you didn't measure it.
A. No.
Q. And based on your experience, when you're looking at a residence such as this, what are the signs for a burglary?
A. Forced entry on the doors, doors unlocked, doors-you can always shimmy a door to make entry on the back door, side *655 door, just by moving a credit card or sliding something in the doorjamb. I'm looking for any kind of signs of forced entry, opened doors, unlocked doors, things of that nature .
Q. Based on your experience, what would cause you to approach a residence like this in the first place?
A. My primarily [sic ] duty there was, once I saw the vehicle in the driveway, doors were open on it, there was no *153 other cars there. The house-at least to my-all my years, it's typically a type of house that's surrounded by woods. The vehicle was-there's no other vehicle in the driveway. The doors are open on the vehicle. The tag comes back to a residence other than that residence, which is-okay, that's things I might need to know. I get out, walk around to the front, check the windows , check the doors , don't see any indicators. Since the back is, to me, there's a primary entrance, that's also where the vehicle was parked, that's probably my point that I may be close-paying close attention to. So I went around to the other side, cleared the other side and came around to the back of the residence .
Q. And is walking around the entire residence like that, is that normal procedure?
A. Yes, ma'am.
(Emphasis added.)
Simply put, the officer, by his own admission, did more than simply knock and talk. The officer ran a license plate on a car whose license plate was not visible from the street, checked windows for signs of a break-in, and walked around the entire residence to "clear" the sides of the home before approaching the back door. Under Jardines , this is precisely the sort of search of a residence that falls outside the knock and talk doctrine. As the Court explained in Jardines , "the background social norms that invite a visitor to the front door do not invite him there to conduct a search." 133 S.Ct. at 1416. Accordingly, we hold that the trial court erred by relying on the knock and talk doctrine to justify the officer's warrantless search of the curtilage of Huddy's home.
II. Community Caretaker Doctrine
We next turn to the community caretaker doctrine. Our State first recognized the community caretaker doctrine in State v. Smathers , 232 N.C.App. 120, 126, 753 S.E.2d 380, 384 (2014). The origin of the doctrine "is the desire to give police officers the flexibility to help citizens in need or protect the public even if the prerequisite suspicion of criminal activity which would otherwise be necessary for a constitutional intrusion is nonexistent." Smathers , at 125, 753 S.E.2d at 384. In applying the doctrine, courts must assess whether "the public need or interest outweighs the intrusion upon the privacy of the individual." Id. at 129, 753 S.E.2d at 386. Factors that courts should consider include "(1) the degree of the public interest and the exigency of the situation; (2)
*154 the attendant circumstances surrounding the seizure, including time, location, the degree of overt authority and force displayed; (3) whether an automobile is involved; and (4) the availability, feasibility and effectiveness of alternatives to the type of intrusion actually accomplished." Id.
Notably, our State's appellate courts have never applied the community caretaker doctrine to a search of a home. As explained above, the Fourth Amendment's protections are at their very strongest within one's home, and thus the public need must be particularly strong to justify a warrantless search of a home under the community caretaker exception.
We hold that the facts in this case do not justify that warrantless intrusion. At the time the officer searched the curtilage of the home, the only indication that there was an emergency was a vehicle in the home's driveway with its doors open. Although this might suggest a home invasion is in progress, there are countless innocent reasons why one might leave doors open in a vehicle parked in a driveway-for example, to make it easier to grab the rest of the groceries or other items the homeowner is in the process of bringing into the home. Thus, this situation is unlike one in which the facts point unquestionably to some public emergency, such as a door that has been broken open, or signs that *656 someone inside the home needs emergency medical attention.
Moreover, there were other available alternatives to the search that the officer could have used, such as knocking at the front door and calling out to ask if anyone needed assistance, or waiting at the entrance to the driveway to observe the vehicle. Applying the objective "totality of the circumstances" test established in Smathers , we hold that the trial court's findings in this case are insufficient to justify a search of the curtilage of Huddy's home under the community caretaker exception.
In sum, the officer's warrantless search of the curtilage of the home was not justified by either the knock and talk doctrine or the community caretaker doctrine. Accordingly, the trial court should have granted Huddy's motion to suppress. See State v. Pope , 333 N.C. 106, 113-14, 423 S.E.2d 740, 744 (1992). We reverse the trial court's order and remand for further proceedings.
Conclusion
For the foregoing reasons, we reverse the trial court's order and remand for further proceedings.
REVERSED AND REMANDED.
Judge ELMORE concurs.
Judge TYSON concurs with separate opinion.