IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-950

 Filed: 7 July 2020

Lenoir County, No. 16 CRS 51778

STATE OF NORTH CAROLINA

 v.

DAVID BRANDON LEE

 Appeal by defendant from judgment entered 30 November 2018 by Judge

William W. Bland in Lenoir County Superior Court. Heard in the Court of Appeals

31 March 2020.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General K.D.
 Sturgis, for the State.

 Law Office of Lisa Miles, by Lisa Miles, for defendant.

 DIETZ, Judge.

 Defendant David Brandon Lee confessed to killing his aunt. On appeal from

his first degree murder conviction, Lee challenges the denial of his motion to suppress

that confession. He argues that his confession was involuntary because he gave it in

exchange for a promise that law enforcement officers would arrange for him to meet

face-to-face with his family.

 As explained below, the trial court properly denied the motion to suppress.

Viewing the totality of the circumstances, Lee’s confession was knowing and
 STATE V. LEE

 Opinion of the Court

voluntary and not the result of an improper inducement by the officers. The

arrangement was Lee’s idea—he suggested it after learning that he would only see

his family through a computer monitor while in jail, and after his father spoke to him

on the telephone and urged him to tell the officers what happened that night.

Throughout the process, the officers complied with the procedural safeguards

required by Miranda and ensured that Lee was able to make a knowing and voluntary

decision to confess. We therefore find no error in the trial court’s judgment.

 Facts and Procedural History

 In 2016, David Brandon Lee lived with his aunt, Trudy Howard Smith. Lee is

a longtime drug addict, and Smith had previously kicked Lee out of her home after

he stole her prescription medications. On 5 August 2016, Lee picked up Smith’s

prescriptions for OxyContin and oxycodone at the pharmacy. Lee had spent the

previous two weeks doing drugs, including cocaine, heroin, and “pills.” Later that

evening, Lee told an acquaintance, Jason Henderson, that he had just shot and killed

his aunt. Henderson reported what Lee told him to law enforcement.

 Officers then went to Smith’s home and found her body. An autopsy confirmed

two gunshot wounds as the cause of death. Police did not find Smith’s OxyContin or

oxycodone prescriptions inside the house. Further investigation confirmed that Lee

had picked up those prescriptions earlier that day.

 -2-
 STATE V. LEE

 Opinion of the Court

 The next day, police arrested Lee, took him into custody, and placed him in an

interview room at the sheriff’s office. One of the officers present, Detective Ronald

Farris, testified that when they brought Lee in, he was slurring his speech and

appeared to be high. Lee admitted to the officers that he had taken oxycodone. After

speaking briefly with Detective Farris, Lee asked for a lawyer. At that point,

Detective Farris ended the interrogation.

 Two days later, Lee sent a letter to the sheriff’s office asking to speak with an

officer. Before sending the note, Lee had spoken to his father on the telephone and

his father told him to “just tell them what you know, son.” Lee also was frustrated

that he was only able to speak to his family on the telephone or through a “computer

monitor” and wanted the opportunity to see his family face-to-face.

 Detective Aaron Shambeau met with Lee in the interrogation room, read Lee

his Miranda rights, and presented Lee with a Miranda waiver form, which Lee

signed. Lee told Detective Shambeau that he knew he was going to prison and

believed he would never get out again, so he wanted to see his family face-to-face one

last time. Then, Lee said he was willing to tell police “whatever you want to know”

but that he wanted to see his family and “hug them goodbye.” Lee stated, “If I can do

that, I’ll tell you whatever you want to know.”

 Initially, Detective Shambeau cautioned Lee that he could not promise him

anything. Detective Shambeau also told Lee that “we can’t say for certain what your

 -3-
 STATE V. LEE

 Opinion of the Court

sentence will be,” sentencing is “a long time away,” and “there’s gonna be plenty of

opportunities to talk your parents” during jail visitation and in court. After consulting

with his superior officer, Detective Shambeau told Lee that he would arrange for him

to meet with his family “face-to face, as long as they want to,” but that Lee would

have to “tell everything, every detail, and don’t leave out anything.” Lee replied that

he felt like the officers were “the only hope” he had of seeing his family again and

that he believed he was doing the right thing. Lee then confessed to his aunt’s murder,

explaining that he thought he could just “knock her out” and take the pills.

 Lee went to trial on a charge of first degree murder. He moved to suppress the

videotape of his confession, but the trial court denied the motion in an oral ruling at

a hearing shortly before trial. The jury found Lee guilty of first degree murder based

on premeditation and deliberation. The trial court sentenced Lee to life in prison

without the possibility of parole. Lee appealed.

 Analysis

 Lee’s sole argument on appeal is that the trial court erred in declining to

suppress his videotaped confession to police.

 “The standard of review in evaluating the denial of a motion to suppress is

whether competent evidence supports the trial court’s findings of fact and whether

the findings of fact support the conclusions of law.” State v. Huddy, 253 N.C. App.

148, 151, 799 S.E.2d 650, 654 (2017). This standard presupposes findings of fact but

 -4-
 STATE V. LEE

 Opinion of the Court

where, as here, the parties agree that there is no conflicting evidence, “we infer the

findings from the trial court’s decision and conduct a de novo assessment of whether

those findings support the ultimate legal conclusion reached by the trial court.” State

v. Nicholson, 371 N.C. 284, 288, 813 S.E.2d 840, 843 (2018).

 Lee argues that his confession should have been suppressed because law

enforcement officers induced him to speak by promising that he could see his family

if he confessed. This inducement, Lee contends, meant his decision to waive his

constitutional rights and speak the officers was not a knowing and voluntary one.

 Due process protections guaranteed by the United State Constitution and the

North Carolina Constitution prohibit the State from obtaining an in-custody

confession from a defendant unless the defendant knowingly and voluntarily makes

that confession. State v. Pruitt, 286 N.C. 442, 454, 212 S.E.2d 92, 100 (1975). Thus,

even in cases where “the procedural safeguards required by the Miranda decision

were recited by the officers and th[e] defendant signed a waiver stating that he

understood his constitutional rights . . . the ultimate test of the admissibility of a

confession still remains whether the statement made by the accused was in fact

voluntarily and understandingly made.” Id.

 Applying these principles, our Supreme Court repeatedly has held that a

confession obtained by the improper “influence of hope or fear implanted in

defendant’s mind” by law enforcement officers can render the confession involuntary.

 -5-
 STATE V. LEE

 Opinion of the Court

Id. at 455, 212 S.E.2d at 100. But the Supreme Court also has held that not every

promise or inducement in exchange for a confession renders the confession

involuntary; the Court “has made it equally clear that any improper inducement

generating hope must promise relief from the criminal charge to which the confession

relates, not to any merely collateral advantage.” Id. at 458, 212 S.E.2d at 102.

 Moreover, in cases “in which the requirements of Miranda have been met and

the defendant has not asserted the right to have counsel present during questioning,

no single circumstance may be viewed in isolation as rendering a confession the

product of improperly induced hope or fear and, therefore, involuntary.” State v.

Corley, 310 N.C. 40, 48, 311 S.E.2d 540, 545 (1984). “In determining whether a

defendant’s statement was in fact voluntarily and understandingly made, the court

must consider the totality of the circumstances of the case and may not rely upon any

one circumstance standing alone and in isolation.” Id.

 Viewing the totality of the circumstances in this case, there are many factors

that distinguish it from cases involving unconstitutional inducements to confess.

First, and most importantly, it was Lee, not the officers, who proposed that he would

confess in exchange for seeing his family. Two days after his arrest, Lee sent a written

note asking to speak to investigators. Lee explained that he expected to be convicted

for the murder of his aunt and that he was willing to tell investigators “whatever you

 -6-
 STATE V. LEE

 Opinion of the Court

want to know” but that he wanted to see his family face-to-face to say goodbye to

them.

 At the suppression hearing, Lee testified that he sent the note because he

intended to condition his confession on law enforcement arranging a face-to-face

meeting with his family:

 My initial reason – and I stated this to Detective Shambeau
 from the very beginning – was that my talking with him
 would be conditional on him arranging a meeting between
 me and my parents because I was fearful that I would
 never see them outside of the – be able to see them face-to-
 face. I had already been told that the – the visits at the jail
 were on a computer monitor, and I wanted to see them face-
 to-face.

 Lee also explained that he had talked to his father on the telephone and his

father told him to “just tell them what you know, son.” Lee testified that his father’s

conversation with him had an impact and that “the right thing to do would be to tell

what happened” but that he wanted to arrange to see his family as part of his

agreement to do so:

 Well, there was a part of me that the felt the right thing to
 do would be to tell what happened. I – I remember making
 the comment: she deserves that much. She deserves for
 somebody to know what happened. But, again, my – it was
 clear from the very start that the only way I would speak
 with Detective Shambeau was if he were to arrange that
 meeting, and he told me it had been arranged.

 Simply put, although the record shows that Lee’s confession was made in

exchange for the promise that he could see his family face-to-face, it also shows that

 -7-
 STATE V. LEE

 Opinion of the Court

Lee’s decision to agree to this exchange was knowing and voluntary. Indeed, it was

Lee’s idea; he contemplated it even before reaching out to the investigators, and he

had other reasons for his decision to confess. He chose—in a reasoned, voluntary

decision—to leverage his willingness to confess to get a face-to-face meeting with his

family that otherwise would have occurred through a remote video meeting.

 Moreover, as noted above, the Supreme Court held in Pruitt that “any improper

inducement generating hope must promise relief from the criminal charge to which

the confession relates, not to any merely collateral advantage.” 286 N.C. at 458, 212

S.E.2d at 102. That did not occur here. The officers never proposed any relief from

the charges against Lee. When Lee asked to see his family face-to-face in exchange

for his confession, Detective Shambeau said he could not “promise” anything and he

then consulted with a superior officer. After that consultation, Detective Shambeau

told Lee that he would be able to arrange that face-to-face meeting if Lee would “tell

everything.” That is precisely what Lee initially proposed—the officers did not

propose any additional terms or conditions that could have induced hope or fear that

rendered Lee’s intended confession involuntary. Accordingly, under Pruitt, the

officers’ proposal to arrange the family meeting in exchange for a confession was not

the sort of improper inducement that renders the confession inadmissible.

Accordingly, the trial court properly denied Lee’s motion to suppress.

 -8-
 STATE V. LEE

 Opinion of the Court

 Conclusion

We find no error in the trial court’s judgment.

NO ERROR.

Judges BRYANT and ARROWOOD concur.

 -9-