IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-471

Filed 7 May 2024

Henderson County, Nos. 21CRS190-91, 21CRS50571-72, 21CRS50574, 21CRS50646-47

STATE OF NORTH CAROLINA

v.

DEMETRIA L. NORMAN

Appeal by defendant from judgment entered 20 September 2022 by Judge Peter B. Knight in Henderson County Superior Court. Heard in the Court of Appeals 14 March 2024.

*Attorney General Joshua H. Stein, by Assistant Attorney General, Robert P. Brackett, Jr., for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender, Michele A. Goldman, for the defendant-appellant.*

TYSON, Judge.

Demetria L. Norman ("Defendant") appeals from judgments entered upon his guilty pleas to injury to real property, safecracking, felony breaking and entering, two counts of felony larceny after breaking and entering possession of burglary tools, and injury to personal property. We affirm.

## I. Background

Fletcher Police Detectives Ron Diaz and Zach Tatham responded to a report of

an Automatic Teller Machine (ATM) having been pried open at Mr. Pete's Market at 3:51 am on 12 February 2021. Mindy Messer, the store manager, also reported ten cartons of Marlboro Gold cigarettes, sixteen cases of alcohol, fifty dollars in quarters and twenty-six packs of North Carolina Lottery tickets were missing. Nate Hemnre, an employee of Mr. Pete's Market, reported the store's ATM machine had contained approximately $2,600 in currency and was empty.

George Banks, an employee of the North Carolina State Lottery Commission, notified Detective Diaz on 17 February 2021 that someone had attempted to redeem one of the lottery tickets stolen from Mr. Pete's Market at the Edneyville General Store at 1:09 pm the previous day. Detective Diaz went to the Edneyville General Store, spoke to the manager on duty, and reviewed surveillance footage of the individual, who had attempted to redeem the stolen lottery ticket.

The surveillance video showed a black Dodge Durango vehicle with black rims and a missing front bumper pull into the Edneyville General Store parking lot. A female exited the vehicle, entered the station, and attempted to redeem the stolen lottery ticket stolen. When the scratch-off ticket was rejected for payment, the woman exited the store, got back into the Durango, which left the parking lot and headed down Chimney Rock Road towards Hendersonville.

Detective Diaz left the Edneyville General Store traveling in the same direction on Chimney Rock Road as the Durango had traveled the day before. After travelling a short distance, he spotted a black Durango vehicle with black rims and a

missing front bumper parked in the driveway of a residence located at 58 Stepp Acres Lane in Hendersonville. He parked his vehicle across the street and called his department for backup to perform a knock and talk at the residence. Detective Diaz ran the license plate displayed on the black Durango and learned the plate was issued in Maryland and was registered to a 2019 Dodge Ram pickup truck, owned by EAN Holdings, a holding company for Enterprise Alamo National, the car rental company.

Detective Diaz called Fletcher Police Lieutenant, Daniel Barale and the Henderson County Sheriff's Office for assistance in conducting a knock and talk at 58 Stepp Acres Lane. Henderson County Sheriff's Deputies Jake Staggs and Josh Hopper were dispatched to the scene.

Detective Diaz planned to conduct a knock and talk to "see if [the occupants of 58 Stepp Acres Lane] could tell [him] anything about" the theft from Mr. Pete's Market. Detective Diaz walked in front of the black Durango parked in the driveway to the front door. Detective Diaz knocked on the door but no one answered. Detective Diaz testified he sensed the residence was occupied.

As Detective Diaz left the front porch, he walked back to his car around the rear of the Durango to re-confirm the Maryland license plate number displayed was consistent with his earlier view. Detective Diaz contacted Henderson County Communications to run another check on the license plate.

Detective Diaz waited for more than a minute to get a response from Henderson County Communications and walked around the Durango and looked into

the driver's side window. He observed a pack of Marlboro Gold cigarettes on the dashboard and a 100X The Cash scratch-off lottery ticket on the front seat. He did not touch the vehicle nor attempt to open the door.

Detective Diaz returned to his office in Fletcher to draft a search warrant. Other officers remained on the scene to secure the Dodge Durango vehicle. Detective Sergeant Diaz spent more than one hour drafting application and affidavit for a search warrant. While drafting the application, Detective Diaz called one of the officers on the scene securing the Durango to read the Vehicle Identification Number ("VIN") through the windshield.

The officers on the scene ran the VIN from the Durango and determined the vehicle was registered to Defendant. Once Detective Diaz completed drafting the application and affidavit for the warrant, he drove to the magistrate's office in Hendersonville.

Lt. Barale ran Defendant's name through the Criminal Justice Law Enforcement Automated Data Services ("CJLEADS") and determined he was currently on supervised probation. Lt. Barale contacted Defendant's probation officer and received Defendant's telephone number. Lt. Barale called the telephone number and spoke with a woman, who identified herself as April Atkinson. Atkinson would not put Defendant the phone or provide Defendant's location to Lt. Barale.

Lt. Barale believed both Atkinson and Defendant were present inside the residence. The Henderson County Communications Center received a call reporting

an alleged assault at Griffin's Store at approximately 4:21 p.m., while the officers remained present on the scene. Griffin's Store is located approximately three miles from the scene at 58 Stepp Acres Lane.

Detective Tatham and Deputy Staggs responded to what was determined to be a fictitious assault report. Lt. Barale and Deputy Hopper remained continuously at 58 Stepp Acres Lane securing the Black Durango vehicle. At 4:32 p.m. a female, later identified as April Atkinson, emerged from the back door of the residence. She refused to speak with Lt. Barale and Deputy Hopper. Lt. Barale heard sounds from the front of the residence and saw a male he believed to be Defendant grabbing items from inside of the Durango. The individual fled on foot attempting to elude Lt. Barale. Lt. Barale noticed a prybar was located inside the bag removed from the Durango.

Lt. Barale returned toward the residence and found the pack of Marlboro Gold cigarettes and the 100X The Cash scratch off lottery ticket on the ground. Lt. Barale seized the pack of Marlboro Gold cigarettes and the 100X The Cash scratch off ticket. Lt. Barale and Deputy Hopper then performed a security sweep of the residence and located Defendant in the living room. Defendant's probation officer was contacted and a search was performed based upon Defendant's supervised probation status. The search yielded a stack of power tool boxes and a cutoff tool.

Lt. Barale notified Detective Diaz about what had occurred at the scene and Detective Diaz was granted arrest warrants for Defendant and Atkinson for felony

conspiracy to break and enter a building to commit larceny and a search warrant for the Black Durango vehicle.

The search warrant for the Durango was executed on 18 February 2021. Officers located "multiple packs of Marlboro Gold cigarettes, cut-off metal wheel blades, ski masks, a pry-bar, a 'Jaws of Life' rechargeable battery, and other items."

Detective Diaz sought and obtained a search warrant seeking data from Cellco Partnership d/b/a Verizon Wireless for Defendant's cell phone number based upon information used to obtain the search warrant of the Durango and the arrest warrants for Defendant and Atkinson.

Detective Diaz received a letter from a confidential source on 9 March 2021, providing information related to multiple breaking and entering offenses allegedly committed by Defendant and Atkinson in North Carolina, South Carolina, and Georgia. Detective Diaz met with the confidential source, who alleged Defendant and Atkinson had broken into a store, cut into an ATM machine, and had removed $2,500 in currency. The source stated only one cut was required to open the ATM, and also asserted cigarettes and lottery tickets were stolen from the store.

The confidential source also provided information regarding how Defendant had completed the robbery, Defendant's identity as the suspect removing items from the Durango, and additional evidence of the crimes was stashed in the attic of the residence located at 58 Stepp Acres Lane.

Based upon this information Detective Sergeant Diaz applied for and was

granted a third search warrant on 10 March 2021. The third search warrant was executed the same day and officers recovered in the attic: (1)six "Jaws of Life" devices of various sizes; (2) eighteen rechargeable batteries for "Jaws of Life" devices; (3) five cartons of Marlboro Gold and two cartons of Marlboro Gold 100s cigarettes; (4) twenty five packs of assorted lottery tickets; (5) an ATM cover panel; (6) two DVR systems with cut wires; (7) an endoscope; (8) a magnetic box with controlled substances inside; and, (9) other assorted items used in the preparation for burglaries. Every lottery ticket stolen from Mr. Pete's Market, except for the one that was attempted to be redeemed at the Edneyville General Store were also located in and recovered from the attic.

Defendant was indicted for injury to real property, safecracking, felony breaking and entering, two counts of felony larceny after breaking and entering, possession of burglary tools, and injury to personal property on 17 May 2021. Defendant filed a motion to suppress all evidence on 19 October 2021. The trial court denied Defendant's motion following a hearing by order filed 31 August 2022. Defendant filed an objection to the order on 2 September 2022.

Defendant pleaded guilty to all charges, while reserving his right to appeal the denial of his suppression motion, and was sentenced to two active consecutive 8 to 18 month sentences.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§§ 7A-27(b), 15A-1444(e), and 15A-979(b) (2023).

### III.    Issues

Defendant argues the trial court erred in denying his motion to suppress because officers had remained in and around the curtilage of his residence for too long after an unsuccessful knock and talk.

### IV.    Standard of Review

The scope of this Court's review of a trial court's order denying a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Bone*, 354 N.C. 1, 7, 550 S.E.2d 482, 486 (2001) (citation omitted).

"In reviewing the denial of a motion to suppress, we examine the evidence introduced at trial in the light most favorable to the State[.]" *State v. Hunter*, 208 N.C. App. 506, 509, 703 S.E.2d 776, 779 (2010) (citation omitted). The trial court's conclusions of law are reviewed *de novo* on appeal. *State v. McCollum*, 334 N.C. 208, 237, 433 S.E.2d 144, 160 (1993) (citation omitted).

### V.    Analysis

Defendant argues the trial court erred in denying his motion to suppress. He asserts officers had unduly remained in and around the curtilage of his residence

after an unanswered and unsuccessful knock and talk. Defendant challenges Detective Diaz's conduct in and around the black Dodge Durango vehicle after leaving the front porch following the unanswered knock and talk.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the pace to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

The Fourth Amendment to the Constitution of the United States requires probable cause must be shown before a search warrant may be issued. *Id.* A reviewing court looks to the "totality of the circumstances" to determine whether probable cause existed to issue a search warrant. *State v. Arrington*, 311 N.C. 633, 641, 319 S.E.2d 254, 259 (1984).

## A. Probable Cause

Probable cause exists if:

> reasonable cause to believe that the proposed search . . . probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender. Probable cause does not mean actual and positive cause nor import absolute certainty.

*Id.* at 636, 319 S.E.2d at 256 (citations omitted).

An officer's application for a search warrant must be supported by an affidavit

detailing "the facts and circumstances establishing probable cause to believe that the items are in the places . . . to be searched." N.C. Gen. Stat. § 15A-244(3) (2023). The information contained in the affidavit "must establish a nexus between the objects sought and the place to be searched." *State v. McCoy*, 100 N.C. App. 574, 576, 397 S.E.2d 355, 357 (1990) (citation omitted). A magistrate must "make a practical, common-sense decision," based upon the totality of the circumstances, whether "there is a fair probability that contraband" will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548 (1983).

Detective Diaz had probable cause to request a search warrant prior to observing in plain view a pack of Marlboro Gold cigarettes on the vehicle's dashboard and a 100X The Cash scratch off ticket on the front seat. Detective Diaz had located what he had reasonable suspicion to believe the vehicle used in attempting to redeem an identified lottery ticket stolen from Mr. Pete's Market.

This vehicle had been identified and recorded in the surveillance video from nearby Edneyville General Store the prior day. Detective Diaz had noticed the black Dodge Durango at the scene was missing a bumper and had black rims as depicted in the videos. This vehicle was located in the immediate area of the General Store in the same direction it had travelled after leaving the store. Detective Diaz also confirmed the Durango was displaying a fictitious out of state license tag.

### B. Knock and Talk

Contrary to Defendant's arguments asserting Detective Diaz and the other

officers had unduly lingered on the scene, our Supreme Court and this Court allows officers to secure a scene "to prevent any evidence located in the residence from being removed or destroyed[.]" *State v. Treece*, 129 N.C. App. 93, 94, 497 S.E.2d 124, 125 (1998); *see State v. McKinney*, 361 N.C. 53, 637 S.E.2d 86 (2006); *State v. Williams*, 116 N.C. App. 225, 447 S.E.2d 817 (1994).

This narrative and evidence was contained in the affidavit, which provided probable cause to issue the search warrant for the black Durango. A substantial basis, between the unique characteristics of: (1) the Durango being used in a crime in the nearby area the day before; (2) displaying an out-of-state and fictitious license plate; and, (3) its close proximity at the scene, exists both in time and location to the possession and attempted redemption of the stolen lottery ticket. Probable cause existed for the magistrate to issue the search warrant for the Durango, while officers secured and maintained the integrity of the scene. *Id.* Defendant's argument is overruled.

**C. Inevitable Discovery**

Presuming, with deciding, the evidence discovered by officers was obtained through illegal searches, as argued by Defendant, the State also argues the trial court correctly denied Defendant's motion to suppress based upon the "inevitable discovery" doctrine. Were we to agree Detective Diaz had no grounds to peer into the vehicle as he left the property to plainly view the Marlboro Gold cigarette pack or Lottery ticket inside the car, or to obtain the vehicle VIN number visible through the

windshield from outside the car, officers had already acquired probable cause to search the vehicle. Probable cause was based upon the vehicle transporting the woman the prior day in the immediate vicinity to attempt to cash in a known stolen lottery ticket, and from the unique characteristics of the black Dodge Durango, viewed om the store's video. This vehicle also displayed a fictitious out-of-state license plate visible to officers from the public street in front of Defendant's residence.

Defendant argues *Collins v. Virginia*, 584 U.S. 586, 201 L. Ed. 2d. 9 (2018) held the automobile exception to the warrant requirement did not apply where the automobile was parked within the curtilage of Defendant's home. The State counters, all incriminating items discovered in Defendant's vehicle and residence would have been discovered anyway if the officers had obtained the warrant earlier.

North Carolina has adopted the "inevitable discovery" rule which does not subject items discovered during a presumably illegal search to the exclusionary rule where the preponderance of the evidence shows law enforcement officers would have inevitably discovered the evidence by lawful means. *See State v. Garner*, 331 N.C. 491, 500, 417 S.E.2d 502, 506-07 (1992). With or without a warrant in hand, officers discovered the black Durango vehicle with unique characteristics, that was shown in the store's video the previous day and displaying a false license plate, actually belonged to Defendant. He was also currently on probation and subject to warrantless searches. In addition, the items inside of the vehicle and residence directly associated with the break-in and robbery would have eventually been

discovered and recovered in a unbroken sequence of events. Defendant's reliance on *Collins* is inapposite and overruled.

## VI.    Conclusion

Detective Diaz had  acquired probable cause to seek the search warrant of the black Durango prior to the knock and talk based upon: (1) the vehicle's unique characteristics of the black rims and a missing front bumper; (2) its location in close proximity to where the stolen ticket was attempted to be redeemed; (3) the display of a fictious out of state plate on the vehicle; and, (4) the recentness of the attempted redemption of the stolen ticket to be granted a search warrant for the vehicle. The officers correctly and lawfully secured the vehicle and scene while the warrant was being sought and obtained.

Presuming, with deciding, the evidence discovered by officers was obtained through illegal searches, the trial court also correctly denied Defendant's motion to suppress based upon "inevitable discovery". Defendant was present at all times, while officers were securing the Durango vehicle and scene, awaiting the warrant, and he attempted to flee. Defendant was under active probationary supervision and subject to warrantless searches. The denial of Defendant's motion to suppress and the judgments entered upon Defendant's guilty pleas are affirmed. *It is so ordered.*

AFFIRMED.

Chief Judge DILLON concurs.

Judge WOOD dissents.

No. COA23-471 – State v. Norman

WOOD, Judge, dissenting.

"At the [Fourth] Amendment's very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Florida v. Jardines*, 569 U.S. 1, 6, 133 S. Ct. 1409, 1414, 185 L. Ed. 2d 295, 501 (2013) (citation and internal quotations omitted). The United States Supreme Court, and subsequent recognition by our Court, has established a line of precedent which emphasizes the importance of this constitutional protection. Consistent with the history and application of this principle, I respectfully dissent from the majority opinion finding the trial court properly denied Defendant's motion to suppress. For the reasons articulated below, I believe the officer violated Defendant's rights under the Fourth Amendment when he exceeded the scope of the knock-and-talk and performed a search of Defendant's curtilage, which contained his vehicle, without a warrant. Accordingly, I would hold the trial court erred in denying Defendant's motion to suppress.

## I. Analysis

### A. Probable Cause Pre-Knock-and-Talk

The majority holds that Detective Diaz had probable cause to request the search warrant of Defendant's vehicle even prior to seeing the Marlboro Gold cigarettes on the dashboard and a 100X The Cash scratch off ticket on the front seat. Prior to looking into the vehicle, the only evidence Detective Diaz had upon which to base probable cause to request a search warrant was a surveillance video showing a

female who had attempted to redeem a stolen lottery ticket getting into the passenger seat of a black Durango with black rims and a missing front bumper, observation of a black Durango with black rims and a missing front bumper in a driveway the following day, the vehicle's proximity to the General Store where the attempted ticket redemption took place, and a fictitious license plate on the vehicle. The majority contends this evidence was sufficient for probable cause to obtain a search warrant of the vehicle for evidence of the burglary committed in another town. I disagree.

To establish probable cause for a search warrant, the supporting affidavit "must establish a nexus between the objects sought and the place to be searched." *State v. Oates*, 224 N.C. App. 634, 641, 736 S.E.2d 228, 234 (2012). "Usually this connection is made by showing that criminal activity actually occurred at the location to be searched or that the fruits of a crime that occurred elsewhere are observed at a certain place." *State v.* McCoy, 100 N.C. App. 574, 576, 397 S.E.2d 355, 357 (1990). Here, without the illegally obtained evidence, the "nexus" is greatly attenuated. The attempted redemption of a stolen lottery ticket by a passenger in a vehicle that had a fictitious license plate was insufficient to link the Durango to the burglary. The burglary occurred in a different town almost a week prior. Based on the totality of the circumstances at that point, "common sense" would require additional inquiry prior to the issuance of a search warrant. It was not reasonable to infer that evidence from the burglary would be found in the Durango simply because a passenger in the vehicle attempted to cash a stolen lottery ticket the day prior. Therefore, Detective

2

Diaz did not have probable cause to request a search warrant prior to the knock-and-talk.

## B. The Knock-and-Talk

Generally, "the fourth amendment as applied to the states through the fourteenth amendment protects citizens from unlawful searches and seizures committed by the government or its agents." *State v. Ellis*, 266 N.C. App. 115, 119, 829 S.E.2d 912, 915-16 (2019) (citations omitted). "When the Government obtains information by physically intruding on persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred." *Jardines*, 569 U.S. at 5, 133 S. Ct. at 1414 (citation and internal quotations omitted). Included in this principle is the protection of a citizen's curtilage, "[w]e therefore regard the area immediately surrounding and associated with the home—what our cases call the curtilage—as part of the home itself for Fourth Amendment purposes. That principle has ancient and durable roots." *Id.* at 6, 133 S. Ct. at 1414 (citation and internal quotations omitted). It is undisputed that Detective Diaz and four other officers entered the curtilage of Defendant's home. Thus, the officers entered a constitutionally protected area where "privacy expectations are most heightened" and their subsequent actions must be lawfully justified. *Id.* at 7, 133 S. Ct. at 1415.

Among such justifications is the knock-and-talk exception. This exception recognizes that "no search of the curtilage occurs when an officer is in a place where the public is allowed to be, such as the front door of a house." *State v. Lupek*, 214 N.C.

App. 146, 151, 712 S.E.2d 915, 919 (2011). "This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Jardines*, 569 U.S. at 8, 133 S. Ct. at 1415. "[L]aw enforcement may not use a knock and talk as a pretext to search the home's curtilage[,]" as "[t]his limitation is necessary to prevent . . . from swallowing the core Fourth Amendment protection of a home's curtilage." *State v. Huddy*, 253 N.C. App. 148, 152, 799 S.E.2d 650, 654 (2017) (citation omitted).

Here, Detective Diaz and another officer walked to the front door of the residence and knocked, but no one answered. Detective Diaz then left the front door, walked to the rear of the Durango to observe the license plate, ran the plate number on the vehicle, and waited at the back of the vehicle for a response from dispatch. Detective Diaz then went to the driver's side of the vehicle, peered through the window, and observed a lottery ticket and a pack of cigarettes, which were similar to items stolen from Mr. Pete's Market. After these observations, Detective Diaz left the premises, returned to his office, and used this information to draft a search warrant. While at the office, Detective Diaz called one of the officers he left at the residence to secure the Durango and asked him to obtain the Vehicle Identification Number ("VIN") from it. The VIN was used to obtain the name of the registered owner, Defendant. Thereafter, Detective Diaz obtained a search warrant for the Durango.

Detective Diaz and the other officers undoubtedly exceeded the scope of the

4

knock-and-talk.  After no one answered the door, Detective Diaz and the other officers were required to leave the property.  A "reasonably respectful citizen" would not find it appropriate to linger on the property and look through the window of a parked vehicle. *Huddy*, 253 N.C. App. at 152, 799 S.E.2d at 654.  Therefore, absent a duly authorized search warrant, Detective Diaz unlawfully remained in the curtilage of Defendant's home and the evidence observed thereafter was improper.

Because the items were able to be viewed from outside of the vehicle, the trial court concluded, "[Detective Diaz] observed the '100 times cash' lottery ticket and the pack of Marlboro Gold cigarettes in plain view.  The Defendant did not have any expectation of privacy for items in plain view from the window."  The trial court's conclusion is contrary to well-established precedent.  "In order for the plain view doctrine to apply, the officer must have been in a place where he had a right to be when the evidence was discovered." *Lupek*, 214 N.C. App. at 150, 712 S.E.2d at 918. "The plain view doctrine does not apply here because [the officer] was not in a place he was entitled to be when he discovered [the contraband]." *Ellis*, 266 N.C. App. at 123, 829 S.E.2d at 918.  Similarly, the plain view doctrine is inapplicable here because Detective Diaz was not in a place where he was entitled to be when he observed the lottery ticket and cigarettes.  The items were observable only after he unlawfully lingered on the curtilage of Defendant's home and peered into Defendant's vehicle.

Furthermore, while still unlawfully remaining on the property, an officer located the VIN by looking through the vehicles window, which enabled Detective

5

Diaz to identify Defendant as the registered owner of the Durango. Similarly, in *Collins v. Virginia,* an officer walked to the top of defendant's driveway, removed a tarp that covered a motorcycle, ran the license plate and VIN numbers to determine if it was stolen, and returned to his vehicle. *Collins v. Virginia*, 584 U.S. 586, 138 S. Ct. 1663, 201 L. Ed. 2d 9 (2018). The Supreme Court held, "[t]he ability to observe inside curtilage from a lawful vantage point is not the same as the right to enter curtilage without a warrant for the purpose of conducting a search to obtain information not otherwise accessible." *Id.* at 600, 138 S. Ct. at 1675. Further, "[the Fourth Amendment] certainly does not permit an officer physically to intrude on the curtilage, remove a tarp to reveal license plate and vehicle identification numbers, and use those numbers to confirm that the defendant committed a crime." *Id.* at 614 n.3, 138 S. Ct. at 1683 n.3. Consistent with such holding, the Fourth Amendment certainly did not permit the officer to remain on Defendant's curtilage, look through the window of the Durango to obtain the VIN, and use that information to identify Defendant. *Id.*

## C. Inevitable Discovery

As an alternative basis for upholding the trial court's suppression order, the majority relies on the "inevitable discovery" rule. Under this rule, the question is whether the evidence associated with the break-in would have eventually been discovered through independent lawful means. *State v. Wells*, 225 N.C. App. 487, 491, 737 S.E.2d 179, 182 (2013). As a threshold matter, given that Detective Diaz did not

6

have probable cause prior to the knock-and-talk, I disagree with the application of the inevitable discovery rule. Additionally, the remaining evidence supplied in the warrant, including the items associated with the burglary, the VIN, and Defendant's identity, would not have been discovered through independent lawful means. By eliminating the illegal search, not only did Detective Diaz not have probable cause, but he would only have knowledge that a vehicle with certain characteristics and a fictitious license plate transported a woman who attempted to redeem a stolen lottery ticket. This knowledge is vastly different than having the knowledge that the Durango contains items consistent with those from the burglary. Therefore, I respectfully disagree that inevitable discovery is applicable in this case. When viewed through a lens of independent and lawful circumstances, the application of the rule is unable to "eliminate the taint that led to the discovery and seizure of the [evidence] in the first instance." *Id.*

## II.    Conclusion

In sum, I would hold Detective Diaz did not have probable cause to apply for the search warrant of the Durango prior to the knock-and-talk. Detective Diaz's actions of walking to the rear of the vehicle, waiting at the rear, moving to the front side of the vehicle, and peering into the driver-side window were not justified by the knock-and-talk exception, and therefore constituted an illegal search under the Fourth Amendment. Furthermore, the inevitable discovery doctrine is not applicable because Detective Diaz did not have probable cause and the other incriminating

evidence could not have been discovered through independent lawful means. Accordingly, the evidence the officers obtained while on Defendant's property after the failed knock-and-talk should have been suppressed. Therefore, I respectfully dissent.